[Crim. No. 1418. In Bank.—April 27, 1908.]

## THE PEOPLE, Respondent, v. LOUIS DABNER, Appellant.

CRIMINAL LAW—MURDER—PLEA OF GUILTY—APPLICATION FOR WITHDRAWAL—DISCRETION.—Where the defendant charged with an atrocious murder in pursuance of robbery, had, contrary to the advice of several attorneys, and under the advice of his father, pleaded guilty of the crime charged, it was within the discretion of the court, when the defendant was called for sentence to be hanged, to refuse leave at that time to withdraw the plea of guilty and to substitute the plea of not guilty, where there is nothing in the evidence to mitigate the atrocity of the crime.

ID.—DISAPPOINTED HOPE—PRIOR GOOD CHARACTER—COLD-BLOODED MURDER NOT MITIGATED.—Neither the fact that the defendant had hoped to receive a life sentence, if he pleaded guilty, in which he was disappointed, nor the fact that he was young, and had borne a prior good character, could mitigate a cold-blooded, deliberate, and atrocious murder.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Carroll Cook, Judge.

The facts are stated in the opinion of the court.

G. P. Hall, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, for Respondent.

SHAW, J.—The defendant, and one John Siemsen, were jointly charged with the murder of one M. Munekata. Upon arraignment, Dabner pleaded guilty. Thereupon the court heard evidence to enable it to ascertain and determine the degree of the crime and upon the evidence taken declared it to be murder of the first degree without mitigating circumstances, and punishable with death. When subsequently brought before the court for judgment and sentence upon the said plea, the defendant asked leave to withdraw his plea of guilty and enter a plea of not guilty to the charge. Evidence and affidavits in support of, and in opposition to, this application, were introduced. The court refused to allow the withdrawal of the plea of guilty and pronounced judgment and sentence of death. The appeal purports to be taken from the judgment and also from the order refusing leave to withdraw the plea. The latter order is not appealable, but inasmuch as it can be reviewed on appeal from the judgment, the point is immaterial. A bill of exceptions, setting forth the evidence taken and proceedings had upon the inquiry as to the degree of the crime and upon the motion for leave to withdraw the plea, was duly settled and appears in the record on appeal.

The evidence shows that Siemsen and Dabner, about noon on November 3, 1906, entered a bank in San Francisco, known as the Japanese bank, which was then in charge of the deceased Munekata, who was its manager, and an assistant named Sasaki, and asked to see the manager on business. They were admitted to the manager's private office, which was in the rear of the premises, and Siemsen immediately struck Munekata on the head with a piece of gas-pipe which Dabner had procured the night before. Munekata was rendered unconscious by the blow and died therefrom shortly afterwards. Dabner, as soon as the blow was struck and Munekata fell back unconscious, called to Sasaki, the assistant, to come to the manager's office. He came and was also beaten over the head by Siemsen and rendered unconscious. Siemsen then took from the till some two or three thousand dollars and the two defendants

went off with it. The entire occurrence occupied but a few minutes and attracted no attention from the outside. The two had visited the bank the day before, for the purpose of observation to ascertain how the robbery could be accomplished, and had carefully planned the affair beforehand, even to the detail that Dabner was to call Sasaki to the manager's office as soon as Siemsen had stricken down the manager with the gas-pipe. There was no fact or circumstance connected with the commission of the murder that tends in the least degree to mitigate it. The only mitigating circumstance concerning the defendant was the fact that he confessed his crime when he was arrested. It was upon his confession that the details of the killing and the robbery were first disclosed. We cannot perceive that his subsequent confession has any bearing upon the question whether or not the crime itself was committed with deliberation and under circumstances which rendered it particularly flagrant and heinous. The court did not err in holding that it was murder of the first degree with no mitigating circumstances.

In support of the application to withdraw the plea of guilty, substitute a plea of not guilty, and go to trial before a jury, it was shown that the defendant was only eighteen years old, and that, until February, 1906, he had lived in or near the city of Petaluma, that he had there borne a good reputation for honesty, integrity, and good behavior and that he was not a strong-minded person, but was easily influenced by others. It was also claimed that he was insane. The grounds of his motion were that his plea of guilty was made through inadvertence, without due deliberation, in ignorance of the law and the consequences of such a plea, in obedience to the advice and instruction of his father, and in the belief that if he made that plea, a jury would be called to fix his punishment and that he would be sentenced only to imprisonment for life. Evidence was given tending in some degree to support some of these grounds. On the other hand, the record shows that when he was arraigned, an attorney was appointed by the court to represent him, that two days were given him to consider his plea, that at the expiration of the two days other counsel were appointed to act as his attorneys and the case was continued for two more days; that a de-

murrer was then filed and submitted without argument and overruled by the court, that the attorneys then stated to the court that the defendant wished to plead guilty, that this was against their advice and that they wanted to withdraw from the case. The court then asked the defendant, personally, if he wanted to plead guilty and he said that he did. The court then informed him that he could have other counsel if he desired it, and proceeded to explain to him, clearly and at length, that, if he pleaded guilty, it would be the duty of the judge of the court, and not a jury, to ascertain and determine whether the crime committed was murder of the first or second degree, and that, if it was determined to be of the first degree, the judge also would have to determine whether he was to be hanged, or sentenced only to life imprisonment, but that if he pleaded not guilty these questions would be decided by a jury. He was then directed to talk to his attorneys further about the matter, and after such conversation inform the court what he desired to do. He then talked with his attorney and again signified his desire to plead guilty, his attorney again declaring that he had advised against it. On the hearing of the motion he testified that in this conversation with his attorney he was advised that if he pleaded guilty the court would determine the crime to be murder of the first degree and sentence him to death by hanging, and that he fully understood what was said to him by the attorney and by the court, but that he was governed in the matter by the advice of his father. After the last statement by the attorney, the court again asked the defendant if he fully understood what he was doing and he answered that he did. His plea was then taken and entered of record, his attorneys immediately withdrawing from the case. The case was continued to the following day to take evidence as to the degree of the crime. At that time the evidence was given, the degree of the crime and punishment was fixed as above stated, and the matter was continued two days for sentence. At the time fixed for sentence a different attorney appeared for the defendant and made the application for leave to withdraw the plea, as above stated.

It thus appears that the defendant was given five days for deliberation as to his plea, that during this time he had

the counsel and advice of three attorneys, all urging him to plead not guilty, that he was fully informed by them as to the difference in the procedure if he pleaded guilty, from that to be had if he pleaded not guilty, and that the court also explained to him the course of procedure. His own testimony taken in these proceedings indicates that he is a young man of at least ordinary intelligence and quickness of apprehension, while that of others tended to show that he was possessed of considerable shrewdness and cunning. It must be conceded that the court justly concluded that the defendant made his plea after ample time for deliberation and not in ignorance of the law, or facts, nor of the course of procedure to be followed, and with full knowledge thereof. Doubtless he was prompted by the hope that he would escape death and be condemned only to imprisonment, and he seems to have been induced to indulge this hope largely by the suggestions and advice of his father. But we do not think this fact of sufficient force to have required the court to permit a withdrawal of this plea after the event had proven that his hope was vain. If this were so, then the punishment upon a plea of guilty must always be something less than the greatest allowed by law, for the defendant, in pleading guilty, always hopes for less, and if his disappointment was sufficient to give the right to withdraw the plea, it would, in such a case, always be withdrawn. It was not until the court had declared that the penalty would be death, and after a subsequent delay of six days, that the defendant applied to withdraw and change his plea.

There was no contention to the effect that there was any serious doubt as to the defendant's guilt, or that evidence could be produced which would tend to prove that the offense was anything less than murder of the first degree, or even to mitigate its atrocity and lay the foundation for a verdict of imprisonment for life, except the claim that the defendant was insane and that prior to his departure from Petaluma, ten months before the time of sentence, he had borne a good reputation for honesty, integrity, and good behavior. The evidence of his insanity was very slight, but nevertheless the court appointed three physicians to examine him in that respect and they unanimously pronounced him sane. His previous good character might have some bearing on the

fact of his participation in the crime, if that were in doubt, but there is no pretense that he did not aid and assist therein with deliberation and previous knowledge of the character of assault which was to be made. A cold-blooded, cruel, and deliberate murder is not rendered any the less atrocious by the fact that the person committing it was previously of good reputation.

Section 1018 of the Penal Code provides that the court may at any time before judgment permit the withdrawal of a plea of guilty and a substitution of a plea of not guilty. It is a matter within the sound discretion of the court, and its action must be upheld unless an abuse of discretion is shown. The following remarks of the court in *People* v. *Miller*, 114 Cal. 16, [45 Pac. 987], are particularly applicable here: "The mere fact that a defendant, knowing his rights and the consequences of his act, hoped or believed, or was led by his counsel to hope or believe, that he would receive a shorter sentence or a milder punishment by pleading guilty than that which would fall to his lot after trial and conviction by jury, presents no ground for the exercise of this liberal discretion. (*People* v. *Lennox*, 67 Cal. 113, [7 Pac. 260].) To hold that it did would be equivalent to saying that a defendant might speculate upon the supposed clemency of a judge, with the right to retract if, at any time before sentence, he began to think that his expectation would not be realized. . . . Only after it is made manifest that defendant is to suffer the extreme penalty, and that no further delay will be permitted, do counsel produce the affidavit, itself made upon the day of the hearing, but not offered until that moment, and ask to be allowed to retrace all these steps thus advisedly taken. What conclusion can be reached except the one that because the court was about to pronounce sentence of death, defendant and his counsel, knowing that he could not fare worse at the hands of a jury, and might fare better, sought an opportunity to essay the other chance."

If we could perceive anything in the evidence which would have called for a lesser punishment than that the trial court was about to impose, some reason might appear why defendant should have been permitted to withdraw his plea and put his fate before a jury. No showing of this kind is made.

The record not only fails to show an abuse of discretion, but, to the contrary, from first to last makes manifest that the trial judge, placed in an unusual and trying position, conducted all of the proceedings with a just and even solicitous regard for the defendant's rights, and ruled as alone it was permissible for him to rule under the facts before him.

The defendant's acts indicate that he is not so dangerous or vicious as his co-defendant Siemsen. His voluntary confession seems to have been full and frank. These facts might have aroused in the mind of the court some degree of sympathy for him, and perhaps, if a jury had considered the case, such sympathy might have been sufficiently potent to have saved him from the death penalty. But the comparison with his partner in crime does not establish the fact that his own acts were not sufficiently atrocious to deserve the severest penalty, but only to show that there were degrees of viciousness to which his disposition and capacity did not carry him. His voluntary confession does not lessen or soften the character of his crime. But, whatever its effect may be, it was addressed to the discretion of the court below, and it is not of sufficient weight to control our action to such an extent as to justify us in declaring that that discretion was abused. The responsibility in such matters rests upon the superior court. This court has no function to perform regarding it, except to see that the discretion of that court is not unreasonably exercised. As a matter of law the action of the superior court is justified by the facts. If an appeal is to be made to sympathy and sentiment it can only be done on an application for clemency and mercy addressed to the executive department of the state.

The judgment and order are affirmed.

Angellotti, J., Sloss, J., Lorigan, J., Henshaw, J., and Beatty, C. J., concurred.