(August 2, 1924.)

## STATE, Respondent, v. NOAH ARNOLD, Appellant.

[229 Pac. 748.]

MURDER—PLEA OF GUILTY—DETERMINATION OF DEGREE—MURDER OF FIRST DEGREE—DETERMINATION OF PUNISHMENT BY COURT—MALICE —MOTION TO WITHDRAW PLEA OF GUILTY AFTER JUDGMENT— GROUNDS FOR—ADDRESSED TO SOUND DISCRETION OF COURT—ABUSE OF DISCRETION.

1. Information for murder examined and found to state a public offense.

2. Upon a plea of guilty of murder, the court must, before passing sentence, take evidence to determine the degree.

3. Whether death or life imprisonment shall be the punishment for first degree murder is a question addressed to the sound discretion of the jury or court, and the decision will be modified only for abuse of discretion.

4. *Held*, that the evidence shows malice.

5. Upon a plea of guilty of murder, and a determination by the court that it is murder of the first degree, it is the duty of the court to decide whether the punishment should be death or life imprisonment, and to pronounce judgment accordingly.

6. The district court may, after judgment, grant a motion for leave to withdraw a plea of guilty and substitute a plea of not guilty, when the plea of guilty was not made voluntarily nor with an understanding of defendant's act in so pleading.

7. An order of the district court denying a motion for leave to withdraw a plea of guilty and substitute a plea of not guilty will be reversed only for an abuse of discretion.

8. Showing in support of a motion for leave to withdraw plea of guilty after judgment and substitute plea of not guilty examined, and *held* to show that appellant entered a plea of guilty voluntarily and not in ignorance of his rights, or because misled by erroneous advice of counsel.

APPEAL from the District Court of the Eighth Judicial District, for Bonner County. Hon. W. F. McNaughton, Judge.

Prosecution for murder. Plea of guilty. Judgment of conviction of murder of first degree, and death sentence.

Appeal from that part of judgment which inflicts death penalty and from order denying motion for leave to withdraw plea of guilty and substitute plea of not guilty. *Affirmed.*

A. T. Aronson, Ivan L. Hiler and Morgan & Smith, for Appellant.

The information must contain a statement of the acts constituting the offense, in ordinary and concise language, so that a person of common understanding may know what is intended. It must directly, and not inferentially, accuse the defendant of the commission of these acts, within the jurisdiction of the court at a time prior to the filing of the information. (C. S., secs. 8811, 8812, 8825–8827 and 8834; *State v. Flower,* 27 Ida. 223, 147 Pac. 786; *State v. Scheminisky,* 31 Ida. 504, 174 Pac. 611; *State v. Cole,* 31 Ida. 603, 174 Pac. 131; *People v. Simpton,* 133 Cal. 367, 65 Pac. 834; *State v. Nelson,* 79 Minn. 388, 82 N. W. 650; *Zinn v. State* (Tex. Crim.), 151 S. W. 825; *Compton v. State,* 71 Tex. Crim. 7, 158 S. W. 515; *State v. Ellis,* 43 Ark. 93; *Shanks v. State,* 51 Miss. 464; *Dukes v. State,* 9 Ga. App. 537, 71 S. E. 921; *Rose v. Commonwealth,* 116 Va. 1023, 82 S. E. 699; *State v. Davis* (Ind.), 136 N. E. 844; *Brooks v. Commonwealth,* 98 Ky. 143, 32 S. W. 403; *Bennett v. Commonwealth,* 150 Ky. 604, 150 S. W. 806; *Underwood v. State,* 19 Ala. 532; *Terre Haute Brewing Co. v. State,* 169 Ind. 242, 82 N. E. 84; *State v. Metsker,* 169 Ind. 555, 83 N. E. 241; *Hewitt v. State,* 171 Ind. 283, 86 N. E. 63; *State v. Beliveau,* 114 Me. 477, 96 Atl. 779; *State v. Clarke,* 141 Iowa, 297, 119 N. W. 719; *Flinn v. State,* 24 Ind. 286.)

Upon a plea of guilty a court is without jurisdiction, of its own motion, to take testimony tending to show circumstances of mitigation or aggravation. (C. S., sec. 9036.)

Where the evidence shows that the homicide was without premeditation or malice, except that which is presumed by law to exist where a murder has been committed in the perpetration of, or attempt to perpetrate arson, rape, robbery, burglary or mayhem, it is an abuse of the court's dis-

cretion to pronounce the death sentence, even if it be invested with jurisdiction to do so, upon a plea of guilty. (16 C. J. 1271.)

A court is without jurisdiction to pronounce judgment and sentence of death in the absence of a verdict of a jury finding and deciding that the death penalty shall be inflicted. (C. S., sec. 8212.)

Where it appears, upon motion to vacate and set aside a judgment and death sentence and to permit the defendant to withdraw his plea of guilty and to enter a plea of not guilty to a charge of murder, that the defendant has been advised by an attorney, appointed by the court to advise him, that in the event he entered a plea of guilty to an information charging him with murder, the court would be without jurisdiction, or power, to pronounce the death sentence against him but, if he should plead not guilty and be tried by a jury, the result would probably be that he would be convicted and hanged, it is an abuse of the court's discretion to deny said motion. (*State v. Raponi,* 32 Ida. 368, 182 Pac. 855; 16 C. J. 397, sec. 730; *State v. Nicholas,* 46 Mont. 470, 128 Pac. 543; *City of Salina v. Cooper,* 45 Kan. 12, 25 Pac. 233; *State v. Coston,* 113 La. 717, 37 So. 619; *State v. Williams,* 45 La. Ann. 1356, 14 So. 32; *Krolage v. People,* 224 Ill. 456, 8 Ann. Cas. 235, 79 N. E. 570; *Deloach v. State,* 77 Miss. 691, 27 So. 618; *Gauldin v. Crawford,* 30 Ga. 674; *Dobosky v. State,* 183 Ind. 488, 109 N. E. 742; *People v. McCrory,* 41 Cal. 458; *People v. Merhige,* 212 Mich. 601, 180 N. W. 418; *Pope v. State,* 56 Fla. 81, 16 Ann. Cas. 972, 47 So. 487; *Bachelor v. State,* 189 Ind. 69, 125 N. E. 773; *Parker v. State,* 189 Ind. 85, 125 N. E. 772; *Trkulja v. State,* 189 Ind. 700, 125 N. E. 773; *Bachelor v. State,* 189 Ind. 701, 125 N. E. 778; *State v. Dunham,* 149 La. 1013, 90 So. 387.)

A. H. Conner, Attorney General, and James L. Boone, Assistant, for Respondent.

A motion addressed to the court to permit an accused to withdraw his plea of guilty is addressed to the sound discretion of the lower court, and will not be disturbed in the

absence of a clear abuse of discretion. (*State v. Raponi,* 32 Ida. 368, 182 Pac. 855.)

Where the appellant does not present facts which would have warranted the lower court in granting the motion to withdraw the plea of guilty, this court will not interfere. (*State v. Raponi, supra; People v. Bostic,* 167 Cal. 754, 141 Pac. 380; *People v. Dabner,* 153 Cal. 398, 95 Pac. 880; *People v. Miller,* 114 Cal. 10, 45 Pac. 986.)

It is first degree murder where a homicide results during the perpetration or in the attempt to perpetrate a robbery, irrespective of whether the murder was included in the scheme of robbery and planned as a part of the execution of that crime. (*People v. Bostic, supra; People v. Milton,* 145 Cal. 169, 78 Pac. 549.)

The lower court has authority on a plea of guilty of murder in the first degree to assess the extreme penalty. (*State v. Ramirez,* 34 Ida. 623, 203 Pac. 279; C. S., sec. 8212; Senate Journal, Eleventh Session, p. 226.)

Where a charge is defectively stated in an information and the defendant does not demur and stand upon the defect, but pleads guilty, he cannot be heard to impeach the weakness of the charge. (*People v. Nash,* 1 Ida. 206.)

All presumptions are in favor of the regularity of the proceedings of courts of record and, in the absence of any showing to establish the fact as to whether or not a court has complied with the requirements of law, the presumption will at once arise that the law has been complied with. (*State v. Suttles,* 13 Ida. 88, 88 Pac. 238; *State v. Ricks,* 34 Ida. 122, 201 Pac. 827.)

McCARTHY, C. J.—Upon a plea of guilty appellant was convicted of murder in the first degree and sentenced to death. Thereafter he moved to vacate the judgment and for permission to withdraw his plea of guilty and enter a plea of not guilty, which motion was denied. Appellant appeals from the judgment in so far as it inflicts the death penalty, and from the order denying his motion.

The first specification of error is that the court erred in pronouncing judgment, in that the information does not state facts sufficient to constitute a public offense. Conceding for the purposes of this case, but not expressly holding, that the question may be raised for the first time on appeal, we have examined the information, and concluded it is sufficient. Following the title of court and cause, the material part of it is as follows:

"Mike Donnelly and Noah Arnold, *alias* Robert Ford, are accused by Allen P. Asher, prosecuting attorney in and for Bonner County, State of Idaho, by this Information of the crime of Murder and that prior to the filing of this information, the said Mike Donnelly and Noah Arnold, *alias* Robert Ford, on the 7th day of August, 1923, had a preliminary examination before the Honorable Myrvin Davis, Probate Judge in and for the County of Bonner, State of Idaho, and were held to answer to the District Court of the Eighth Judicial District of the State of Idaho, in and for the County of Bonner for the crime of Murder committed as follows, to-wit:

"That the said Mike Donnelly and Noah Arnold, *alias* Robert Ford, on or about the 16th day of July, A. D. 1923, at the County of Bonner, State of Idaho, then and there did unlawfully, wilfully, wrongfully, feloniously, deliberately, premeditatedly, and with malice aforethought, kill and murder one Wm. Crisp, a human Being.

"All of which is contrary to the Statute in such case made and provided and against the peace and dignity of the State of Idaho. . . . . "

Appellant invokes C. S., secs. 8811, 8812, 8825–8827 and 8834, which provide in effect that the information must contain a direct and certain statement of the acts constituting the offense in ordinary and concise language so that a person of common understanding may know what is intended. Counsel contends that the charging part of this information is fatally defective in that it does not allege that appellant committed any act, but simply charges that he had a preliminary examination and was held to answer

to the district court for the crime described therein. The form of the information might be improved and the allegation is not as direct as it might be. However, we conclude that the defect in form is not fatal. The opening clause of the information informs the defendant that he is accused of the crime of murder. Reading the information as a whole we think it fairly subject to the construction that the act described in the second paragraph is the murder of which appellant is accused. It cannot be said that the information totally fails to state a public offense. If there be any defect it is one of form not substance, and certainly is one which would have to be raised by demurrer, pursuant to the provisions of C. S., sec. 8870, subd. 2.

The minutes show that, upon appellant entering a plea of guilty of murder in the first degree, the court ordered a hearing for the purpose of obtaining information relative to the degree of the crime and the proper. penalty. The second specification of error is that the court erred in thus taking testimony of its own motion, and without the request of either party. Appellant's counsel relies on C. S., sec. 9036, which is as follows:

"Sec. 9036. After a plea or verdict of guilty, where a discretion is conferred upon the court as to the extent of the punishment, the court, upon the oral suggestion of either party that there are circumstances which may be properly taken into view either in aggravation or mitigation of the punishment, may, in its discretion, hear the same summarily, at a specified time, and upon such notice to the adverse party as it may direct."

We are of the opinion that this statute should not be so construed as to prevent the court from making an investigation on its own motion when called upon to pronounce sentence. Even if this statute should be given the construction contended for by appellant there is nothing in the record to show that an "oral suggestion" was not made to the court. A presumption of validity attaches to the proceedings of a court of general jurisdiction, in a matter over which it has once acquired jurisdiction, which can be over-

come only by a showng to the contrary. (*State v. Suttles,* 13 Ida. 88, 88 Pac. 238; *State v. Ricks,* 34 Ida. 122, 201 Pac. 827.)

"Where the record is silent it will be presumed that the proper steps were taken to support an action taken by the district court in the exercise of its jurisdiction." (*Kilbourn v. Smith,* 38 Ida. 646, 224 Pac. 432; *State v. Price,* 38 Ida. 149, 219 Pac. 1049.) Finally the court was certainly within its rights in ordering the hearing and taking the evidence complained of in order to determine the degree of the crime, under C. S., sec. 9024, which reads as follows:

"Sec. 9024. Upon a plea of guilty of a crime distinguished or divided into degrees, the court must, before passing sentence, determine the degree."

The next specification of error is;

"The court erred in pronouncing judgment and sentence of death against the defendant for the reason that the evidence, adduced at the hearing held to further enlighten the court in finding the degree of the crime and in fixing the penalty, is insufficient to justify a judgment of conviction of murder or the pronouncing of the death sentence."

The evidence shows the following facts without contradiction. Appellant and a confederate entered deceased's place of business at night for the purpose of committing robbery. Appellant pointed a gun at deceased and told him to hold up his hands. Deceased did not put his hands up high enough to satisfy appellant, whereupon appellant cursed, and said, "Put up your hands, or I will bore you." Appellant took deceased's watch out of his pocket, deceased "grabbed" for it, and asked Mr. James Campbell, who was in the room, to "grab" appellant. The instant after deceased "grabbed" appellant, appellant shot him in the abdomen. Murder committed in the perpetration of, or attempt to perpetrate, robbery is murder in the first degree. (C. S., sec. 8211.) Death or imprisonment for life are alternative penalties provided for murder of the first degree; the statute making no distinction in this respect between the different acts which constitute that crime. (C. S., sec.

8212; *People v. Bostic,* 167 Cal. 754, 141 Pac. 380; *People v. Milton,* 145 Cal. 169, 78 Pac. 549; *People v. Manriquez,* 188 Cal. 602, 206 Pac. 63.) Appellant pleaded guilty to murder of the first degree. The evidence taken by the court clearly shows that he was guilty of that crime, and there is nothing in the record to show that the court erred or abused its discretion in deciding the punishment which should be inflicted.

"Where the trial court had decided, as required by Pen. Code, sec. 1192, that, upon the evidence introduced, the defendant who had pleaded guilty, was guilty of murder in the first degree, it was within his discretion to impose the death penalty." (*People v. Manriquez, supra.*)

See, also, *People v. Miller,* 114 Cal. 10, 45 Pac. 986; *People v. Dabner,* 153 Cal. 398, 95 Pac. 880.

The next specification of error is that the court erred in pronouncing the death sentence upon appellant because the evidence shows the killing to have been without malice. As above stated, the killing was murder of the first degree under the express definition contained in C. S., sec. 8211. If any further comment be necessary, it is sufficient to point to the fact that malice may be express or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned or malignant heart. (C. S., sec. 8210.) In our judgment the evidence shows express malice within the above statutory definition. The only possible question which can be raised in this connection is whether there was sufficient deliberation to show express malice. We conclude there was. If it be thought there was not sufficient deliberation to show express malice, then the conclusion is unescapable that there was implied malice. The evidence shows no provocation, and certainly shows an abandoned and malignant heart. In *People v. Bostic, supra,* it was contended that a statute similar to ours applied only to a murder which was planned be-

forehand as a part of the execution of the robbery. The supreme court of California aptly said:

"The mere statement of such a theory carries its refutation, for it must be apparent that without reference to the robbery such a murder would be a 'wilful, deliberate, and premeditated killing.'"

It further said:

"In such cases the law does not measure the delicate scruples of the robber with reference to shooting his victim. The law holds him highly guilty if he does kill, and it makes no difference whether he strikes down a man, as did Dabner and Siemsen, presumably upon the theory that 'dead men tell no tales,' or slays the brave man who resists, as did Montague. In either case he is a murderer subject to the finding of the jury upon trial, or of the court after a plea of 'guilty,' that he shall suffer death or imprisonment for life."

The next specification of error is that the court erred in pronouncing sentence of death because it was without jurisdiction to do so upon appellant's plea of guilty. C. S., sec. 8212, provides:

"Every person guilty of murder in the first degree shall suffer death or be punished by imprisonment in the state prison for life, and the jury may decide which punishment shall be inflicted. . . . ."

After a plea of guilty it becomes the duty of the court to pronounce judgment. (C. S., secs. 9023 and 9034; Re Dawson, 20 Ida. 178, 117 Pac. 696, 35 L. R. A., N. S., 1146.) The statute makes no exception of a murder case. The only effect of C. S., sec. 8212, is that, where there is a jury trial on a plea of not guilty, the jury may decide which punishment shall be inflicted. Even in such case, if the jury does not decide the penalty, the court must do so. (State v. Ramirez, 34 Ida. 623, 203 Pac. 279; State v. Hoagland, ante, p. 405, 228 Pac. 314. See, also, People v. Miller, supra; People v. Dabner, supra; People v. Manriquez, supra.)

The last specification of error is that the court erred in denying appellant's motion to vacate the judgment, to per-

mit him to withdraw his plea of guilty and enter a plea of not guilty. This court has held that under C. S., sec. 8881, the district court may, after judgment, grant a motion for leave to withdraw a plea of guilty and substitute a plea of not guilty, where the application is based upon the fact that "the plea of guilty was not made freely and voluntarily nor with understanding of the nature of the act of defendant in making the plea." (*State v. Raponi,* 32 Ida. 368, 182 Pac. 855.)

It has also held that an order of the trial court denying such a motion will be reversed only for abuse of discretion. (Ibid.) The Attorney General originally contended that such motion must be made within the time limited by statute for a motion for a new trial, and that the motion in this case came too late. It appears from a supplementary record sent here on motion for diminution that the trial judge extended the time for a motion for a new trial, and that the motion in question was made within the time as extended. The ground of appellant's motion is that he did not understand his rights and was misled by the erroneous advice of the attorney who represented him at the time the plea was entered. Appellant in his affidavit states:

"That he had no money, nor property of any kind and was, at the time of his arrest and arraignment, entirely without means to employ counsel; that it was his desire to enter a plea of not guilty and to stand trial upon the charge of murder which had theretofore been preferred against him by information filed by the prosecuting attorney of said county and that on being informed of his lack of means with which to employ counsel the said judge appointed A. T. Aronson, Esq., an attorney of the above entitled court, as attorney for affiant and to represent and counsel and advise him in the above entitled cause;

"That upon conferring with affiant the said attorney advised him that public sentiment in the community was so high against him that if he entered a plea of not guilty and stood trial he would be more than likely to suffer the penalty of death, but that on the other hand if he should enter a plea

of guilty the judge would be without authority to impose the death penalty upon him; that he, this affiant, asked his said attorney if the judge could impose the death penalty upon him in case he entered a plea of guilty and that his attorney answered and said that the death penalty could not be imposed without a jury trial and that if the prosecution insisted upon giving him a jury trial he, the said attorney, would change the plea from guilty to not guilty.

"Affiant further says that prior to his arraignment and plea he had been taken by the sheriff from the jail into the country some distance from Sandpoint where he was seized by a mob and was bound, blindfolded and hanged, after which he was let down and was required by said mob to give information relative to the circumstances of the alleged crime with which he was charged and as to the whereabouts of one Mike Donnelly, his codefendant; that the statements which he made to the mob were in the nature of a confession, were extorted from him and were not freely or voluntarily made; that he entered his plea of guilty to the crime of murder in the first degree without being informed that the statements so made by him were not competent evidence against him, and believing the members of the mob would be permitted to testify against him if he should enter a plea of not guilty and demand a trial by jury.

"Affiant further says that when he had entered his plea of guilty the judge asked him if he realized the death sentence might be pronounced against him; that he was so frightened he did not answer and relying upon advice of his counsel he permitted the plea to stand; that had he known the judge had legal authority and power to sentence him to death he would not have entered a plea of guilty but would have pleaded not guilty and insisted upon his right to have the facts submitted to a jury and have his guilt or innocence determined by it and the nature of his punishment fixed by it.

"Affiant further says that had he been advised of his right to a change of venue and of his right to have excluded the testimony of the members of the mob above mentioned

he would have insisted upon applying for such change of place of trial and would have entered a plea of not guilty.

"Affiant further says that he is not guilty of the crime of murder and that he has a good defense to said charge which he believes can be successfully made if he is granted a fair and impartial trial to a jury as is guaranteed him by the constitution of the state of Idaho."

A. T. Aronson, Esq., the attorney who represented appellant at the time the plea of guilty was entered, states in his affidavit:

"That affiant, prior to the time of pleading, told the defendant that if he stood trial, a jury would be almost certain to inflict the death penalty, and that by reason of the hostile public sentiment prevailing in each of the counties of the judicial district, a change of venue would be of no advantage to the defendant;

"Affiant further advised the defendant that in his opinion the judge was without authority to impose the death penalty in case a plea of guilty were entered, because under the statute, it seemed that the jury, only, could decide which punishment shall be inflicted; that if, however, the judge should decide that he had the power to inflict the death penalty, he would nevertheless be likely to sentence the defendant to life imprisonment, because the crime committed by the defendant was not a deliberate and premeditated killing, but one which was committed in the perpetration of another offense, and therefore constituted murder in the first degree only because of the statute; that in view of the classification of the various kinds of killing constituting murder in the first degree, and in view of the circumstances surrounding the commission of the offense charged, the judge would be more inclined to impose the lesser of the two punishments mentioned in the° statute, than would a jury; that acting upon the opinions and advice of affiant as hereinbefore set forth, the defendant pleaded guilty;

"That in conferring with the defendant, affiant found it difficult to explain and make clear to him certain matters

concerning and affecting his rights under the law, although affiant stated things as plainly as possible by using simple words and repeating statements, that the defendant seemed apprehensive as to the possible effect of the admissions which he had made at the time of the pretended hanging referred to in his affidavit, and although affiant stated to him that evidence of what occurred or was said while he was in the hands of the mob could not be used against him for any purpose, the defendant did not seem to get rid of the idea that those matters would count against him; that after the hearing had been held before the judge, the day before the defendant was sentenced, he expressed surprise at the failure of the prosecuting attorney to bring said matter up, or to introduce any testimony as to the statements which had been extorted from him.''

Allen P. Asher, the prosecuting attorney, made an affidavit containing the following statements:

''That affiant talked with said defendant on two occasions after his capture, once just before the capture of his codefendant, Mike Donnelly, and once a few days after the capture of Mike Donnelly, and that defendant appeared to be a man of good understanding and good intelligence and upon affiant remarking to the defendant that he must have had considerable education in order to use as good language as he did, defendant told affiant that he had had a grammar school education and two years of high school.

''That defendant told affiant on such occasions that he fully realized that he was guilty of murder in the first degree but stated to affiant the following in substance at least: 'I don't want any life imprisonment. I have just finished five years in the penitentiary and I don't want any more of it. I would rather be hanged than to go to the penitentiary for life.'

''Affiant further states that upon the hearing held before Judge W. F. McNaughton to determine the degree of guilt of defendant after his voluntary plea of guilty that no evidence of any kind was introduced relative to any con-

fession made by defendant at the time he alleges that he was seized by a mob and was bound, blindfolded and hanged.

"Affiant has no personal knowledge in regard to whether said defendant did make confession at said time and place, but alleges that if he did make a confession that same was undoubtedly true, but in any event that said confession was not used against the defendant in any manner and in talking with said defendant at the county jail on the Sunday following said confession and alleged coercion, affiant asked Arnold if he cared to make a written confession and he stated 'No, that he would not at that time, that he would make statement later and that he intended to tell the judge the truth about it, just how it happened and that that would be the same as a confession.'

"That in the information filed in this action, a copy of which was presented to the defendant, names of the state's witnesses were set forth and the defendant and his counsel could easily have ascertained that there were no witnesses endorsed on said information for the purpose of proving said alleged confession."

The minutes of the court show that, at the time fixed for appellant to plead, he entered a plea of guilty, that thereupon the presiding judge explained to him that a plea of guilty to the crime charged in the information might result in the infliction of the death penalty, that the judge again asked appellant what his plea was, to which he replied guilty of murder in the first degree. The correctness of these minutes is not denied, appellant's only statement about this matter in his affidavit being that he did not answer because he was frightened, and permitted the plea to stand relying upon advice of his counsel. While the judgment of the court was rendered on September 15, 1923, the motion to withdraw the plea of guilty was not made until October 8th. We are not advised as to the character of the alleged defense which appellant mentions in his affidavit. The evidence properly taken by the court following the plea of guilty shows, not only that appellant killed the deceased while robbing him, but that he shot deliberately and in-

tentionally. There is no evidence, not even a suggestion, that the gun was fired accidentally. Although appellant and his counsel knew from the court's own statement that the evidence was being taken in order to determine the degree of the crime, and must also have known that it would naturally be considered in deciding the penalty, no evidence was introduced on behalf of appellant.

In denying the motion the lower court evidently concluded that, upon the showing made, it did not appear that the appellant had entered a plea of guilty in ignorance of his rights, or because he had been misled by erroneous advice of his counsel. The question for us to decide is whether the lower court in so holding abused its discretion. The affidavits of appellant and Mr. Aronson, who represented him, are in conflict to this extent. Appellant says that Mr. Aronson advised him that the district court could not impose the death penalty upon him if he pleaded guilty. According to Mr. Aronson's affidavit he advised appellant that in his opinion the judge was without authority to impose the death penalty upon a plea of guilty, but if the judge himself decided that he had that power he would, nevertheless, be likely to sentence appellant to life imprisonment. Whatever advice the attorney may have given him, the outstanding fact is that, in open court, after appellant signified an intention to plead guilty, the judge warned him that this might mean the infliction of the death penalty, and that thereafter the appellant proceeded to enter his plea. There is therefore no tenable ground for contending that appellant was misled or was ignorant of the consequences which might follow his plea, and certainly no ground for contending that the trial court abused its discretion in denying the motion. Appellant complains that his attorney did not advise him he was entitled to a change of venue, and that the court might, if circumstances justified it, remove the cause for trial to a county outside the judicial district. Certain statements are made in appellant's affidavit, which, if true, would have been material on an ap-

plication for a change of venue. That question was not raised and all the facts which would have been material upon such an issue are not before us. It is a matter of speculation so far as this record is concerned. There is no evidence in the record that the district judge was disqualified to act in the case. On the contrary, the record shows that he proceeded in an orderly and fair manner to decide the matter properly submitted to him. Appellant also complains he was not advised that the alleged confession, which he says was extorted from him by a mob, was not admissible in evidence. The state did not attempt to introduce evidence of this confession. The decision of the district court as to the penalty is supported by evidence both competent and sufficient. Appellant knew he had committed an atrocious murder, had every reason to believe he would be convicted, and was speculating whether his chance of escaping the death penalty would be better upon a plea of not guilty and trial by jury, or upon a plea of guilty and judgment by the court. In this he was not misled or deprived of any right. The judgment should not be set aside merely because he is disappointed in the result which he hoped would follow. (*People v. Miller, supra; People v. Dabner, supra; People v. Manriquez, supra.*)

The order and judgment appealed from are affirmed.

Budge, Dunn and Wm. E. Lee JJ., concur.

WILLIAM A. LEE, J., Dissenting.—The affidavit of appellant, which is not controverted as to the principal facts, states that following his arrest and prior to his arraignment and plea he was taken by the sheriff from the jail where he was being held awaiting trial, into the country and was seized by a mob, blindfolded and hanged, after which he was let down and required by the mob to give information about the commission of the alleged crime and the whereabouts of his alleged accomplice, in the nature of a confession of guilt; that when he was brought before the trial court and

stated that he was without means with which to employ counsel to represent him the court appointed counsel to do so, and such counsel advised him that public sentiment in the community was so high against him that if he entered a plea of not guilty and stood trial he would more than likely be given the death penalty, but that if he entered a plea of guilty the judge would not have authority to impose the death penalty upon him; and that when he entered a plea of guilty the judge did ask him if he realized that the death sentence might be pronounced against him on such plea and that he was so frightened he did not answer but relied upon the advice of counsel which the state had furnished him, and believed that the confession which the mob had extorted from him could be used if he stood trial, and so allowed the plea of guilty to stand, but that had he believed the judge had authority to sentence him to death upon his plea of guilty he would not have entered such plea.

The plea of guilty was entered on the 11th of September, 1923, and the judgment of the court that appellant should suffer the death penalty was entered on the 15th of September thereafter. Upon securing additional counsel appellant, on October 8, 1923, moved that the judgment be vacated and that he be permitted to withdraw his plea of guilty and enter a plea of not guilty, which motion was denied.

The right of those accused of crime to a jury trial extends to the guilty as well as to the innocent, and in some jurisdictions human life cannot be taken by sanction of law without the verdict of a jury. In states not having such a provision I think the instances are comparatively rare where upon a plea of guilty the death penalty has been inflicted. It was recently stated upon credible authority that in one of the older jurisdictions, in more than 300 pleas of guilty of murder entered, only one person was executed upon such a plea, indicating the reluctance of courts to impose the death penalty except upon the verdict of guilty by a jury.

An application to withdraw a plea of guilty in a capital case should be allowed where such application is made soon

after the entry of the plea, and where it further appears that a confession of guilt was obtained by unlawful means and the plea of guilty has been made in the belief that such confession would be used against the accused if he stood trial, and all the other facts and circumstances were such as to induce a plea of guilty that might not otherwise have been made. This is more nearly in harmony with the humane policy of the law that human life will not be taken for the commission of crime unless all the usual and ordinary safeguards with which the law surrounds an accused person have been scrupulously complied with.

The United States supreme court, speaking through Mr. Justice Harlan, in *Hopt v. Utah,* 110 U. S. 574, 4 Sup. Ct. 202, 28 L. ed. 262, said:

"The natural life, says Blackstone, 'cannot legally be disposed of or destroyed by any individual, neither by the person himself nor by any other of his fellow creatures, merely upon their own authority.' 1 Bl. Com. 133. The public has an interest in his life and liberty. Neither can be lawfully taken except in the mode prescribed by law. That which the law makes essential in proceedings involving the deprivation of life or liberty cannot be dispensed with or affected by the consent of the accused; much less by his mere failure, when on trial and in custody, to object to unauthorized methods. The great end of punishment is not the expiation or atonement of the offense committed, but the prevention of future offenses of the same kind. 4 Bl. Com. 11."

I am also of the opinion that the information in this case is fatally defective in that it does not comply with C. S., sec. 8827, and fails to be direct and certain as to the offense charged. Appellant's counsel say they are unable to find any authority or precedent that sustains the sufficiency of this information, and I think none can be found. It is beside the question to say that because appellant understands he is being charged with murder the information is therefore sufficient within the requirements of the law. He understood the nature of the charge when he was being hanged

by the mob, but that did not obviate the necessity of filing a formal charge as required by law, in the trial court. The information itself is a sufficient and conclusive answer to the claim that this has been done.

Entirely aside from any question as to the guilt of this appellant there should be no appearance of the courts approving or countenancing in any degree some of the proceedings resorted to by which this plea of guilty was probably obtained. I think a refusal to allow its withdrawal may be reasonably construed as a condonation of such unlawful acts. The language of the supreme court of Nebraska, in *Reynolds v. State*, 58 Neb. 49, 78 N. W. 483, seems to me peculiarly appropriate to the situation here, wherein it is said:

"It has been suggested, and is doubtless true, that in this case 'outraged justice has laid her avenging lash on the back of one who honestly deserves the scourge,' but we cannot for that reason alone affirm the judgment. The jurisdiction of the courts is not co-ordinate with that of the mob."

Petition for rehearing denied.