[Crim. No. 16613. Second Dist., Div. Two. Mar. 31, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES FRATIANNO, Defendant and Appellant.

**COUNSEL**

Cantillon & Cantillon and James P. Cantillon for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Richard D. Huffman and Jay D. Coulter, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion.

**HERNDON, Acting P. J.—**

### Statement of the Case

Appellant James Fratianno entered a plea of guilty to a charge of conspiracy to commit petty theft. When the trial judge thereafter indicated his intention to deny appellant's application for probation, appellant made a motion to withdraw his plea of guilty. After reviewing the affidavits and other evidence offered in support of the motion and in opposition thereto, and after hearing the arguments of counsel, the trial court denied the motion and entered judgment sentencing appellant to state prison for the term prescribed by law.

The sole contention advanced by Fratianno on this appeal is that the trial court abused its discretion in denying his motion to withdraw the guilty plea. The major premise of appellant's argument is that his plea was induced by conduct on the part of the prosecuting officers and of the trial judge which he and his counsel reasonably construed as assurance that he would be granted probation.

■ The record demonstrates that the premises upon which appellant's arguments are based are completely false and leaves no room for doubt that the trial court exercised its discretion reasonably and properly in denying the motion to withdraw the guilty plea and in denying the application for probation.

### Statement of the Facts

By the amended information alleging four counts, appellant and his codefendants, Fratianno Trucking Company, Inc. and Miles & Sons Trucking Service, Inc., were charged with conspiracy to commit theft in the first count, grand theft in the second and third counts, and a misdemeanor violation of the Public Utilities Code in the fourth. Appellant was charged with three prior felony convictions: two robberies in Ohio in 1937 and 1938, and conspiracy to commit extortion in California in 1954.

On October 9, 1968, a meeting was held in Beverly Hills attended by appellant, his attorney, Mr. James Cantillon, Deputy Attorney General Richard Huffman, Imperial County District Attorney James Hamilton, and Joel Taylor, an investigator for the state. This meeting was held in anticipation of the trial of this cause which was then scheduled to commence on October 14, 1968. The evident purposes of the meeting were twofold: first, to finalize previous negotiations between counsel and to make a record of the terms and conditions upon which Fratianno would enter a plea of

guilty to the first count of the information; and second, to obtain from Fratianno a statement in the nature of a deposition to indicate the substance of the testimony he could be expected to give if and when called by the prosecution as a witness at the forthcoming trial of the codefendants.

The proceedings of this Beverly Hills meeting were recorded by a court reporter and the pertinent portion of the transcript thereof has been made a part of the record herein. We quote the following significant excerpt from that transcript:

"Mr. HAMILTON: My name is James Hamilton, District Attorney from Imperial County. Mr. Richard Huffman, Deputy Attorney General, and Mr. Joel Taylor of the Bureau of Criminal Identification and Investigation, State Department of Justice, are also present. Mr. Fratianno, I would like to first state to you the substance of some conversations that have occurred between Mr. Huffman and Mr. Cantillon and myself and Mr. Cantillon regarding the reason why we are here this morning, and then after we are through with that, I'm going to ask you to be placed under oath prior to answering any further questions. Do you understand that? Mr. FRATIANNO: Yes, sir. Mr. HAMILTON: Within the last two weeks there have been several conversations between Mr. Huffman and Mr. Cantillon, and I believe one telephone conversation between myself and him, regarding the reason why we are here and pursuant to those conversations we have agreed to amend Count I of the Information that is pending in the Superior Court here against you to change the words 'Grand Theft' to 'Petty Theft.' Now, this is in connection with Count I, which is a conspiracy count; do you understand that, sir? Mr. FRATIANNO: (Nods head.)

"Mr. HUFFMAN: This we intend to do next Monday morning when we appear in court here in Los Angeles. Thereafter it is our understanding that you will enter a plea of guilty to Count I as amended and admit the third prior conviction in that record, which is a conviction that occurred here in the State of California. Also at the same time, Mr. Cantillon will enter a plea of guilty to that same amended Count I with regard to the Fratianno Trucking Company, Inc., who is also a Defendant. After that plea has been entered, the prosecution will then move the Court to dismiss Counts II, III and IV of the Information and the first two prior convictions, which are out of state convictions with regard to you and also we will move to dismiss Counts II, III and IV with regard to the Fratianno Corporation. Mr. FRATIANNO: (Nods head.) Mr. HAMILTON: Now, I want it clearly understood at this point— Mr. CANTILLON: We have one other count hanging over there, that last one, or is that the misdemeanor? Mr. HAMILTON: That's Count IV. Count I is the conspiracy, II and III are Grand Theft, and IV is the misdemeanor. Mr. CANTILLON: Right, right.

"MR. HAMILTON: We want to make it clearly understood, now, what our position is as far as the disposition of the charge in Count I to which you will enter a plea of guilty. *We can make absolutely no promises to you whatsoever as to what the Court will do in the way of a sentence with regard to that and it should be understood by you that the Court will have the power and it is the only agency that has the power to determine what sentence will be passed upon you.* We have agreed and we do agree now that we will make no objection to any court granting probation to you, but we will object if the Probation Department recommends or if the Court indicates that they will, we will object to anything less than a felony sentence. Has this been explained to you by Mr. Cantillon? MR. CANTILLON: In other words, Jimmy, as I explained to you, the Court will have the power to make this a misdemeanor by sentence. They would object to the Court doing that. That still doesn't mean the Court wouldn't do it. However, in all likelihood I would anticipate the Court would probably make a felony sentence out of it.

"MR. FRATIANNO: What kind of a—you know— MR. CANTILLON: *Well, I'm most hopeful the Court would put you on probation concurrent with the period of probation you are now serving.* The *maximum sentence* that you could receive, it is our understanding among us, and this is what we contemplate, *would be one to three years* on the count that you are pleading guilty to. *If the Court gave you the term prescribed by law, the most you would receive would be one to three years* as the count is amended. MR. HAMILTON: You understood that? MR. FRATIANNO: Yes, I do. MR. HAMILTON: The Court can grant you probation whether or not they make it a misdemeanor or felony and we will not object to the granting of probation if the Court chooses to do so, but that decision is with the Court. We promise we will make no objection to giving you probation, but we will object if they attempt to reduce the crime from a felony to a misdemeanor. You understand our position completely? MR. FRATIANNO: Yes, sir." (Italics added.)

Five days later on October 14, 1968, the following proceedings before Judge George M. Dell were recorded:

"THE COURT: Let the record reflect that the Court and counsel had a conference in chambers a few minutes ago. The first matter, it was indicated that the People would move to amend the Amended Information at Page 2, Lines 11 and 12 so as to substitute the word 'petty' for the word 'grand' and the Section '488' for the Section '487' and it was indicated there would be no opposition on the part of any of the defendants to that motion. The motion, accordingly, is granted and the Court makes those amendments by interlineation. The People may proceed.

"MR. CANTILLON: At this particular time, your Honor, the defendant Fratianno Trucking Company and James Fratianno would request permission to withdraw the plea of not guilty heretofore entered to Count I for the purpose of entering a guilty plea to that count as amended. THE COURT: The withdrawal of the plea is agreeable to the Court and I will ask the District Attorney to take the plea. MR. HAMILTON: Mr. James Fratianno; is that your true name? DEFENDANT FRATIANNO: Yes, sir. MR. HAMILTON: How do you plead to Count I of the Amended Information? DEFENDANT FRATIANNO: Guilty. MR. CANTILLON: I will enter the plea on behalf of the corporation and their counsel. THE COURT: Let me just inquire. Mr. Fratianno, has any promise or representation been made to you by the Court or by the District Attorney or by your own counsel or by any other person with reference to what action the Court may take by virtue of this guilty plea if the Court accepts the plea? DEFENDANT FRATIANNO: No, sir. THE COURT: Are you acting freely and voluntarily at this time? DEFENDANT FRATIANNO: Yes, sir. THE COURT: Are you pleading guilty on your own behalf at this time because in truth and in fact you are guilty and for no other reason? DEFENDANT FRATIANNO: Yes, sir. THE COURT: You understand the matter of sentence and the matter of probation, if that is applicable, is entirely a matter which must be decided by the Court, and even though one may expect a certain result, one may be disappointed in that result? In other words, I don't know anything about this case. I will have to read the probation report and I will do what I feel is proper after I read the probation report. You understand that? DEFENDANT FRATIANNO: Yes, sir. . . .

"THE COURT: There are three priors alleged. I think the next order of business would be to inquire as to those priors. MR. HAMILTON: Mr. Fratianno, do you admit the prior conviction of a felony; to wit, a conspiracy to commit extortion, in the Superior Court of the State of California, for the County of Los Angeles, on or about April 6, 1954? DEFENDANT FRATIANNO: Yes, sir. THE COURT: I will enter an admission of that prior. What disposition will be made of the other two priors? MR. HAMILTON: At this time we ask the Court to strike the other two priors. THE COURT: They will be stricken on the People's motion. MR. CANTILLON: And the balance of the counts— MR. HAMILTON: In respect to Fratianno Trucking Company and James Fratianno, we ask the Court to dismiss Counts II, III and IV in the interest of justice. THE COURT: At this time; is that correct? MR. HAMILTON: Yes. THE COURT: Very well. On the People's motion those counts will be dismissed in the interest of justice. MR. CANTILLON: Your Honor, waive time for sentence and request permission on behalf of Mr. Fratianno to file a written application for probation."

On November 13, 1968, approximately a month after he had entered

his plea of guilty and while his application for probation was pending, appellant was called by the prosecution as a witness at the trial of his codefendants. Judge Arthur Alarcon was the judge presiding at this trial. The following testimony was given by appellant on cross-examination by defense counsel:

"On the 9th of October, 1968, this year, the District Attorney of Imperial County met with you and Mr. Cantillon and Mr. Huffman in Mr. Cantillon's office; is that correct? A. Yeah. Q. And there at that meeting the District Attorney of Imperial County told you that he would not object to probation for you as a result of your pleading guilty out there in court to the one count? A. Well, can I answer that with an explanation? Q. Well, you can tell me 'Yes' or 'No' first. Did he tell you that he wouldn't object to probation for you? A. Yeah, he wouldn't object to probation, right, if we asked for it. Q. And that question of sentence or probation and sentence, that matter has not yet been heard, has it? A. What do you mean? Q. Well, you go before the Judge on the 18th of this month, don't you? A. Yeah, on the 18th, right. It hasn't been heard. Q. Now, at the time that the District Attorney told you about his proposal to strike these various counts and to let you—and take a plea from you for one count and also told you about the recommendation with respect to probation, did he also inform you at that time he was going to require you to make a statement under oath to him? A. I made a statement under oath. Q. Didn't he indicate to you that was the purpose of the meeting? A. *Well, he told me before I made a statement under oath that they couldn't promise anything.* Q. I know that. A. *They couldn't promise anything. But that I would get no favors, that it was up to the Judge.* Q. That's right. A. And this is all— and we went on and had a court reporter there and I gave him a statement—I gave him the answers the way I'm giving them here. Q. *He told you that he couldn't tell you what the Judge was going to do?* A. *That's right. It's entirely up to the Judge.* Q. But he did tell you that he would move to strike three counts, didn't he? A. He would ask the Judge. Q. All right. He would ask the Judge. And that he would inform the Judge that he had no objection to the Judge granting you probation? A. I don't know if he says 'inform,' but he says he wouldn't object if we asked for probation. Q. *All right. And I want to make this perfectly clear. He did not try to tell you what the Judge might do in connection with the case at all, did he?* A. *Nobody knows what the Judge will do.*" (Italics added.)

On December 16, 1968, the date to which appellant's probation and sentence hearing had been continued, Judge Dell indicated that he had read the report of the probation officer and observed that a copy of the transcript of the proceedings at the Beverly Hills meeting of October 9, 1968, was attached thereto. He then invited comment from counsel before

pronouncing judgment. Mr. Cantillon responded with a plea for probation. When Mr. Cantillon had finished, the following colloquy ensued:

"THE COURT: Well, I will be glad to hear what the People's position is. MR. HUFFMAN: Your Honor, I think we would just refer the Court to Page 6 of the statement taken from Mr. Fratianno on October 9th, 1968 and I believe that that page sets forth our position pretty clearly. THE COURT: Yes, I read that. I have that particularly in mind when I made the observation that I did, and of course that is exactly what counsel stated in chambers to the Court in Department 100 when I was presiding there prior to the time the plea was entered. . . . It was my understanding that the Attorney General and the District Attorney of Imperial County would make no objection to the grant of probation but that there was no assurance or promise or representation made that it would in fact be granted, and I would have to see the probation report first. I would like to know at this time whether the People have any stronger position other than the fact they will not object if the Court wishes to grant probation on the basis of a felony conviction which is— MR. HUFFMAN: No, your Honor, I think our position is set forth very clearly there and it is still our position."

After further discussion the court indicated its findings and conclusions, denied appellant's motion, and ordered the entry of the judgment from which this appeal in taken.

### The Trial Court's Findings and Conclusions

Our detailed recital of the facts and our quotations from the record are designed to demonstrate the sufficiency of the evidence to support the trial court's express and implied findings. Among the trial court's express findings are the following: (1) that the district attorney and the Attorney General who represented the People in this case. acted in complete good faith throughout the proceedings and in every particular "lived up to the letter" of the agreement which they entered into with appellant and his counsel on October 9, 1968, when he agreed that he would enter a plea of guilty to the first count of the information upon the conditions recited in the record from which we have quoted; and (2) that Fratianno was not induced to enter his guilty plea by any assurance that he would be granted probation and that nothing was said or done either by the representatives of the People or by the court which could reasonably have been regarded as either an express or implied assurance or promise that probation would be granted.

The record supplies convincing indications that the court's decision to deny probation was not made until after the report of the probation officer

had been received and until after the argument of appellant's counsel had been heard at the probation and sentence hearing.

*Appellant's Arguments*

The quality of the contentions advanced by appellant in this case is fairly indicated by the following opening paragraphs of the "argument" section of this brief:

"Defendant JAMES FRATIANNO testified that no promise or representation was made to him by the court, the District Attorney, or his own counsel. He went on to testify that at the time of entering his plea of guilty he was acting freely and voluntarily, he was pleading guilty because he was, in fact, guilty, and that he understood that the matter of sentence or, alternatively, probation was entirely in the hands of the Court. ·

*"If this testimony had been taken seriously by the one giving it or even by those hearing it, it would be devastating to this appeal.* However, these representations cannot be taken at face value in determining the defendant's motivation either in entering the guilty plea or giving these particular answers.

"These questions regarding lack of promises, voluntariness of action, guilt, etc. are always asked before a court will accept a guilty plea. They are always asked even when all parties, including the court, know that a plea bargain has been made and the sentence has been predetermined. In such instances the questioning has become merely a ritualistic tradition." (Italics added.)

Judge Dell evidently took the indicated testimony of Mr. Fratianno seriously and did not regard the asking of the questions required in such proceedings by the decisions of our highest courts as a mere ritualistic ceremony and an idle performance. And since we take the indicated questions and answers very seriously, the testimony given by appellant at the time he entered his plea, coupled with his other testimony and statements, is not merely "devastating to this appeal" but completely fatal.

The clear and definite terms of the plea bargain to which counsel previously had agreed subject to the court's approval had been fully and accurately disclosed to the court in appellant's presence immediately before he gave this "devastating" testimony. In this context there was absolutely nothing in the conduct of court or counsel in the course of taking appellant's plea of guilty that had the slightest tendency to stultify the proceedings or to reduce them to a mere ritualistic ceremony. If ever our courts descend to countenance the playing of games as blatantly dishonest as that to which

this appellant now asks us to give our judicial sanction, then our system of criminal justice will indeed have fallen upon evil days.

The statements made in appellant's brief accusing the representatives of the People with bad faith and questioning the integrity of the trial court are unjustified and unworthy. Such statements are difficult to reconcile with the following quotation from the affidavit of James P. Cantillon filed in support of appellant's motion to withdraw his guilty plea: "In setting forth the reasons for my assurance to Mr. Fratianno that he would receive probation, I certainly do not intend to justify what now appears to me to have been grave error in judgment, nor do I intend to imply that anyone other than I misled the defendant."

As we have shown, the statements of Mr. Cantillon at the Beverly Hills meeting and the testimony of Mr. Fratianno before Judge Alarcon would support, and indeed would compel, a finding that neither Mr. Cantillon nor anyone else had given appellant any assurance, either before or after he entered his plea of guilty, that the court would grant him probation.

### The Applicable Law

No one has questioned the undisputed fact that a plea bargain was made in this case. Neither has anyone so much as suggested that there was anything illegal, improper or immoral in the terms of the agreement made in this case. Therefore, we need not further extend this opinion by reciting the considerations which indicated that the agreement was justifiable and advantageous from the standpoint of both the People and the defendant.

■ Our Supreme Court has recognized and approved the procedure involved in accepting a plea of guilty subject to the terms of a bargain. Such approval, of course, is subject to the necessarily implied condition that the bargain must be entered into honestly and understandingly and in appropriate form. And certainly the defendant is entitled to withdraw his plea of guilty if either the prosecution or the court repudiates any term of the bargain to his prejudice. (*People* v. *Delles,* 69 Cal.2d 906, 910-911 [73 Cal.Rptr. 389, 447 P.2d 629].)

■ "The parties agree that this review is governed by general principles which were last set forth by this court as follows: 'The granting or denial of a motion by a defendant to withdraw his plea of guilty rests in the sound discretion of the trial judge and his decision will not be disturbed on appeal unless an abuse of that discretion is clearly shown. (*People* v. *Ottenstror* (1954) 127 Cal.App.2d 104, 109 [273 P.2d 289]; *People* v. *Beck* (1961) 188 Cal.App.2d 549, 552 [10 Cal.Rptr. 396]; *People* v. *Parker* (1961) 196 Cal.App.2d 704, 708 [16 Cal.Rptr. 718].) ■ A defendant seeking

to withdraw his plea of guilty and substitute a plea of not guilty must show good cause for such application. (Pen. Code, § 1018.) "While a plea of guilty may be withdrawn pursuant to Penal Code section 1018 by reason of mistake, ignorance, inadvertence or any factor that overcame .the defendant's exercise of a free judgment, the basis of the motion for relief 'must be established by clear and convincing evidence.' " [Citations.]" (*People* v. *Brotherton,* 239 Cal.App.2d 195, 200 [48 Cal.Rptr. 513].)

■ As we stated in *People* v. *Caruso,* 174 Cal.App.2d 624, 642 [345 P.2d 282]: "The fact that the defendant is disappointed in the sentence he received following a plea of guilty presents no ground for the exercise of the judicial discretion to permit the plea of guilty to be withdrawn. (Cf. *People* v. *Dabner,* 153 Cal. 398 [95 P. 880]; *People* v. *Manriquez,* 188 Cal. 602 [206 P. 63, 20 A.L.R. 1441]; *People* v. *Aseltine,* 139 Cal.App. 768, 770-771 [34 P.2d 830].) ■ A defendant charged with an offense cannot be permitted to gamble on the anticipated result of a plea of guilty and when disappointed in the outcome reestablish a right to trial. (*People* v. *Northcutt,* 38 Cal.App.2d 258, 259 [100 P.2d 1094]; *People* v. *Bechtel,* 124 Cal.App.2d 659, 660 [268 P.2d 1072].) Nor is the fact that after plea but before sentence the defendant has become apprehensive regarding the anticipated sentence sufficient to compel the exercise of judicial discretion so as to permit the plea of guilty to be withdrawn. (Cf. *People* v. *Francis, supra,* 42 Cal.2d 335 [267 P.2d 8].) Nor may the defendant enter a plea of guilty confident that if by some fortuitous circumstance his chances of an acquittal are substantially improved, he may thereafter withdraw his guilty plea as of right. (Cf. *People* v. *Gilbert,* 25 Cal.2d 422, 442 [154 P.2d 657].)"

The following from *In re Teran,* 65 Cal.2d 523, 528 [55 Cal.Rptr. 259, 421 P.2d 107], is particularly apposite: "Even if Teran's comments were viewed as a motion to withdraw his guilty plea on the ground of the asserted promise, it does not appear that the trial court abused its discretion in not granting the motion. The attorney's statements suggest that such a promise was not made, and the trial court appears to have believed the attorney. ■ In any event, in the absence of state involvement, advice or assurances by defense counsel will not vitiate a plea entered in reliance thereon. (*In re Nunez, supra,* 62 Cal.2d 234, 236 [42 Cal.Rptr. 6, 397 P.2d 998]; *People* v. *Caruso, supra,* 174 Cal.App.2d 624, 637-638, 640; see *In re Watkins,* 64 Cal.2d 866, 872 [51 Cal.Rptr. 917, 415 P.2d 805]; *People* v. *Fleming,* 190 Cal.App.2d 149, 150 [11 Cal.Rptr. 743].)"

■ Where, as here, the order denying the motion to withdraw the plea of guilty and the pronouncement of judgment are "practically one act," the order is reviewable on the appeal from the judgment and is not separately

appealable as an "order made after judgment." (*People* v. *Delles, supra,* 69 Cal.2d 906, 908-909.)

The attempted appeal from the order is dismissed and the judgment is affirmed.

Fleming, J., and Wright, J., concurred.