STATE, RESPONDENT, *v.* HUKOVEH, APPELLANT.

(No. 8418.)

(Submitted May 5, 1943. Decided July 9, 1943.)

[139 Pac. (2d) 538.]

126

*Mr. Myles J. Thomas,* for Appellant,

*Mr. R. V. Bottomly,* Attorney General, and *Mr. Fred Lay,* First Assistant Attorney General, for the State,

MR. CHIEF JUSTICE JOHNSON delivered the opinion of the court.

Defendant appeals from orders made after final judgment in two criminal cases denying his motions for leave ''to withdraw his plea of guilty heretofore entered in this case and substitute his original plea of not guilty by reason of insanity.''

On June 6, 1939, defendant shot and killed two men, one of whom was the Night Chief of the Anaconda Police Department and the other of whom was a former deputy sheriff, and on June

12th two informations were filed charging him with murder of the first degree. The judge of the Third Judicial District was absent from the district at the time and the Hon. T. E. Downey, a judge of the Second Judicial District, was presiding in his place. The record shows that defendant's sole fear was that he would be hanged for the offenses, but the presiding judge properly refused to give the desired assurance and even suggested a personal doubt that any punishment short of execution would be adequate. Pleas of not guilty were therefore entered in the two cases. The resident judge, the Hon. R. E. McHugh, having expressed personal scruples against taking a man's life except upon the verdict of a jury, defendant on July 14, 1939, after Judge McHugh's return, changed his pleas to guilty on both charges, and was then sentenced to life imprisonment on each.

Defendant's motions to change his pleas were made to the court on October 24, 1942, pursuant to notices given on October 15th, over three years and three months after his convictions and sentences. They are identical and are based upon defendant's affidavit, "additional testimony and affidavits to be produced at the hearing," and upon the records and files in the case. The body of defendant's affidavit is as follows:

"Enoch Hukoveh, being first duly sworn on oath, deposes and says: That he is the defendant in the above entitled action.

"That for six or seven years prior to the 6th day of June, 1939 he was addicted to the use of alcohol in all forms, either grain or denatured or otherwise, and had consumed so much of it that he was in a mental state of insanity.

"That he was raised in Anaconda, Montana and grew up there and knew both Albert H. Oldhaber and Edwin Stuart and had never been in any trouble or disagreement of any kind with either of them and held no ill-feeling or animosity, grudge or malice of any kind against either of them.

"That he has no recollection of having shot and killed them on June 6, 1939, and he has no recollection of where or how he secured the gun with which the killings took place.

"That he is reliably informed that he did shoot and kill them

on that day, and believes this to be a fact, but alleges that such killings were not premeditated.

"That the first recollection that he has of being in trouble is when he found himself wounded and in the State Penitentiary at Deer Lodge, where he was told he was being held in safe-keeping for having killed two men in Anaconda.

"That for more than a week he was so held in Deer Lodge, suffering untold agony because of being deprived of alcohol and trying to make his mind function clearly so that he could realize the seriousness of his situation.

"That he has a faint recollection of being taken from Deer Lodge to Anaconda and taken before a Judge of this Court and something being said about his getting an attorney; that he also has a faint recollection of again being brought into court with attorney J. B. C. Knight and entering a plea of not guilty; that after entering the aforesaid plea of not guilty he remained in jail, and gradually as time went on his craving for liquor became less acute, his physical pain decreased, and his mind began to function more clearly.

"That he pleaded not guilty upon the advice of his attorney, who informed him that Judge Downey of Butte was presiding and that they should 'stall' the matter along until Judge Mc-Hugh, the regularly elected Judge of the Third Judicial District, returned from his vacation.

"That upon the return of Judge McHugh from said vacation he was advised by his attorney that he should withdraw his plea of not guilty and enter one of guilty and that the Judge would sentence him to a term in Deer Lodge which he could serve for a few years and then be paroled.

"That he never did understand that he had been charged with premeditated murder and would never have pleaded guilty to such a charge as he never did premeditate this killing and his attorney never informed him that he would receive a life sentence, but instead led him to believe that he would be sentenced to a term of years; that his attorney advised him that if he would plead guilty and throw himself upon the mercy of the Court

that the Court would give him a lighter sentence than he would receive if he stood trial; that the plea of guilty which he entered by reason of the advice of his attorney was in fact not voluntary but was made as a result of misunderstanding and misapprehension on the part of this affiant, who was then and there in ignorance of his rights and of the consequences of his act; that no one ever explained to him the difference between first and second degree murder; that he did not know when he was present in court and changing his plea that he was pleading to two informations (the one filed in this case and the one filed in cause 2006) and that in each of them he had been charged with premeditated murder in the first degree.

"That it was not until after he had been confined in the Penitentiary at Deer Lodge for six or eight months that his mind fully cleared; that he became completely rational and for the first time fully understood that he had pleaded guilty to two murder charges (this one and the one charged in cause 2006) and had been sentenced to a life term in each case, and that by reason of section 12264, R. C. M. 1935, he would have to serve on each term a period of twenty-five years less the diminution provided for and that by virtue of section 11596, R. C. M. 1935, his term of imprisonment in cause 2006 could not commence to run until after the term of imprisonment of which he had been sentenced in this case."

It will be noted that defendant's motions seem to be based on the three propositions (1) that he was insane by reason of alcoholism when he killed the two men and continuously thereafter until some six or eight months after sentence; (2) that he did not know that he was pleading guilty to two separate charges; (3) that he did not then, or until six or eight months thereafter, learn the effect of sections 12264 and 11596, Revised Codes.

It seems apparent however that defendant's sole purpose up to the time of sentence was to escape the danger of execution for the two crimes and that he was glad to plead guilty to both of them in order to escape that fate. It is apparent also that his

sole purpose now is to escape the subsequently discovered point of law, that because he had pleaded guilty to both crimes before being sentenced for either, the sentences are consecutive and not concurrent; for in his brief he says: ''The defendant believes that by reason of section 11596, R. C. M. 1935, the two sentences which he received ran consecutively and not concurrently. If the defendant is incorrect in this belief and is so informed by the court then he will be glad indeed to withdraw his objections and stand corrected.''

Defendant did not appear at the hearing, but J. B. C. Knight, who acted as his attorney up to the time of the sentences, his mother, brother, and four other witnesses, were called on his behalf. Not even his mother or his brother testified that he was insane either at the time he entered his pleas or at any other time, although they were not very complimentary as to his temperance, industry and other characteristics. Not one of his witnesses testified that he was insane or corroborated his statement that his attorney told him he would be sentenced less than for life.

On the other hand, Mr. Knight testified that on June 12, 1939, when the informations were filed and when the defendant had been in confinement at Deer Lodge for six days after the shootings, he seemed to be rational and to know exactly what he wanted to do; that ''He knew what he did. * * * He was sorry he did it and he said if he could get off and save his life and enter a plea and be committed for life upon the offenses that would be satisfactory. * * * He wanted to enter a plea of guilty and get not to exceed life; that is what he wanted to do. * * * I left the decision of what he wanted to him; that is, whether he pleaded guilty or not was up to Enoch and he wanted to be sure that he would not be hung * * *;'' that after Judge McHugh returned ''I talked the matter over with him [defendant] and he made up his mind of what he wanted to do. I explained to him fully the position he was in with charges of murder. * * * It was his own judgment and that of the members of his family to enter a plea of guilty if he could get off with life, and that was done * * *.

He knew he would not be hung before we changed our plea;"
that the defendant discussed the cases fully with him in a con-
versation of one and a half to two hours on their first conference;
that defendant knew that there were two charges against him be-
cause he had killed two men and because he had received copies
of two informations; that he knew he was charged with pre-
meditated killing because the attorney had heard rumors of
former trouble between defendant and one of the murdered men,
and questioned him about it; that Mr. Knight then explained to
him the degrees of murder; that it was defendant's decision to
enter the first plea of not guilty upon learning of Judge Dow·
ney's refusal to commit himself as to punishment, and that it
was defendant's decision to change the plea after Judge Mc·
Hugh's return; that Hukoveh knew exactly what he was doing
and that the changes of plea were at his own request; that Mr.
Knight had asked the county attorney and Judge McHugh if
one of the informations could be dismissed if defendant pleaded
guilty to the other; that "They both told me they would not
consent to one of them being dismissed; that he would have to
plead guilty to both of them. I told Hukoveh about it and he
said all right, he was willing to do that. * * * I thought if we
could get one of them dismissed it would be all right but the
county attorney and the judge said they would not dismiss one
of the informations and therefore he pleaded guilty to both;"
that he knew he was pleading guilty to both; that Knight did
not tell defendant he would merely be sentenced to a term of
years and would then be paroled as alleged in his affidavit; that
"the understanding was when he pleaded guilty that he would
get life;" that many of the statements in defendant's affidavit
are not true; that there was no discussion about whether the
sentences would run consecutively or concurrently; that "When
we first talked about him entering pleas to these offenses he was
personally willing to enter a plea in both informations. It was·
my thought he should only enter a plea in one on account of both
informations."

In this state of the record, to say the least, it is impossible to

find that the denial of defendant's motion was an abuse of discretion or that the trial court should obviously have granted the motion on the questions of fact. We cannot say that it was manifest error for the trial court to find against defendant's contentions that he was not sane when the pleas were entered or that he was not aware that he was pleading guilty to two charges. Certainly the evidence is sufficient to justify the trial court's conclusion that the defendant was sane at the time he entered his pleas; that he and his family knew the situation and were concerned solely in preventing a possible death penalty, and that defendant was well and faithfully represented by counsel. He was clearly not misled into entering pleas of guilty to both charges, and he could not otherwise have accomplished his desire to escape jury trial and a possible death penalty, since the judge and the county attorney would not consent to the dismissal of either information.

The defendant's third point, which is based upon the alleged subsequent discovery of the effects of sections 12264 and 11596, is a matter of law and not of fact. Section 12264 provides that no parole shall be given a convict serving a life sentence until he shall have served twenty-five years, less the reduction for good conduct provided by section 12455, or a minimum of thirteen years and nine months actual imprisonment.

Section 11596 provides that when a person has been convicted of two crimes *before sentence has been pronounced upon him for either* the sentences must run consecutively and not concurrently. Therefore the determinative point under the statute is not whether defendant pleaded guilty to one or two crimes but whether, upon his plea of guilty to both, the sentence upon the first preceded or followed his plea on the second. Of course, if he had pleaded guilty to only one charge there would be no possibility of his serving more than one sentence, but except for the circumstances to which section 11596 is applicable he might plead guilty to two or more crimes and still in effect serve only one sentence, since all of the sentences might be concurrent. But he does not claim any understanding that the two sentences were to

have been concurrent, or that he was to have been sentenced upon the first plea before entering the second. Without reference to the question of the propriety of any such prior understanding with the judge, there is no claim that the defendant was misled in either of those respects.

Having already found that the trial court committed no error in ruling against defendant's application on the claims that he was not sane when entering his pleas and that he did not know that he was pleading guilty to and receiving sentences for two separate offenses, and there being no claim of any understanding that the two sentences were to have been concurrent or that the pleas were to be handled so as to make section 11596 inapplicable, it is not material when defendant discovered the effect of that section or of section 12455, as matters of law. It is therefore necessary to affirm the orders appealed from.

In our consideration of this matter, we have not found it necessary to rule upon numerous questions naturally suggested. The first is the question whether a motion of this kind made after judgment can be of any effect unless incorporated with a motion for the vacation of the judgment and sentence so that the new plea can be effective. Under the circumstances it would seem, however, analogous to a motion to amend a complaint made *functus officio* by judgment, without moving that the judgment be set aside so as to permit the amendment to be effectively made. The second question suggested is whether the district court could have any jurisdiction to consider a motion of the kind more than three years after sentence, especially where it is apparent on the face of the application that some two and one-half years have expired since the discovery of the alleged grounds of the motion. However, the question of jurisdiction was not raised, although the state contended that motions of the kind must be made within a reasonable time after judgment. The third question which was raised by the state, but is not necessary to consider, was whether there is any such thing as a plea of ''not guilty by reason of insanity.'' (Secs. 11907 and 11908, Rev. Codes.)

The orders appealed from are hereby affirmed.

ASSOCIATE JUSTICES ERICKSON, MORRIS, ANDERSON and ADAIR concur.

Rehearing denied July 20, 1943.